No. 32,542

B. H. Boner, *Appellee*, v. The Texas Company, *Appellant.*

(57 P. 2d 420)

Opinion filed May 9, 1935.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery, M. F. Cosgrove, Balfour S. Jeffrey,* all of Topeka, and *Y. A. Land,* of Denver, Colo., for the appellant.

*S. M. Brewster, J. L. Hunt, Margaret McGurnaghan, John H. Hunt,* and *George M. Brewster,* all of Topeka, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case involves the question of whether or not there was any consideration for twenty-three contracts made subsequent to the execution of a commission contract, each of which subsequent contracts attempted to modify the original contract by authorizing certain deductions from the commissions earned under the original contract.

The plaintiff, an agent of the defendant oil company, seeks by this action to recover the deductions made each month by the defendant company during the two years and more that the original commission contract was in force.

The original contract, made March 1, 1931, covered the territory within twenty-five miles of the defendant's bulk-sales station in Topeka, and stated in detail the commission to be allowed the

plaintiff for all sales of defendant's products made by him within that territory. The defendant on the date this contract was made owned or had leased a few filling stations within this territory, and within a few days after making the original commission contract plaintiff signed separate contracts as to each of these filling stations, agreeing to pay the defendant company each month a certain amount per gallon to reimburse the company in part for expenses paid by the company at said station. Afterwards a similar agreement was signed as to sales made at each newly purchased or leased filling station, and such deductions were made in each monthly statement rendered by the company, and checks were regularly sent by defendant to plaintiff for the balance. These deductions during the twenty-six months the agency lasted amounted to something more than $12,000. There is no controversy about the exact amount. The plaintiff is either entitled to recover all of such deductions or none, and it seems to depend almost entirely upon the question of whether there was any consideration for the plaintiff in his executing these twenty-three subsequent contracts.

The voluminous evidence introduced was all documentary and by stipulation, except the oral evidence of the plaintiff. The following paragraphs of the original contract, called commission-agency agreement, are pertinent to the matter now under consideration:

"The company shall:

"(1) Have the right at its opinion to withhold any commissions, moneys or anything of value in its possession belonging to or due agent, for the purpose of reimbursing itself for any amounts due hereunder from agent at any time.
. . .

"These commissions shall be subject to deductions herein mentioned and/or counterclaims by the company, and, after deductions therefor have been made, the resulting sum shall be in full payment for all services rendered by agent hereunder. . . .

"This agreement shall continue in full force and effect until terminated by either party of [on] five days prior written notice."

The question of want of consideration was not raised until the reply was filed. The plaintiff based his cause of action upon the commission-agency agreement, from which the above quotations were made, and the plaintiff claimed the amounts that had been deducted during the twenty-six months from his earned commissions under the terms of the agreement. The answer of the oil company set up the twenty-three station-agency agreements signed by the plaintiff authorizing, as it claimed, such deductions to be made, and

also pleaded the same as a counterclaim. The reply of plaintiff to this answer and counterclaim was a general denial, and specifically denied that the station-agency agreements, the execution of which was admitted, constituted valid contracts or agreements between the parties or had any binding effect upon the plaintiff, for the reason that there was and is no consideration whatever for the execution thereof, and that said contracts are therefore void. This was denied by a further pleading of the defendant.

The burden of proof to show want of consideration for the station-agency agreements was therefore upon the plaintiff, and he testified on that question as follows: "Q. Did you ever receive any consideration for signing this contract?" (referring to one of them, exhibit No. 6), and his answer, after objections were overruled, was "No, sir." He made the same answer as to the other station-agency agreements after objections to questions were overruled.

These station-agency agreements were all made between the plaintiff as party of the first part and defendant oil company as party of the second part, and signed by them. Some of the pertinent portions of them were as follows:

"Witnesseth: That whereas the agent is the commission sales agent of the company at Topeka, Kansas, and

"Whereas, the company owns or has leased the following-described land (describing the particular filling-station lot). . . .

"Whereas, the agent will be paid commissions upon sales and/or transfers of gasoline and other petroleum products made by the company to the operator of the station on the above-described premises.

"Now, therefore, for and in consideration of the premises and other good and valuable considerations, the agent, effective the 1st day of March, 1931, shall pay the company not later than the tenth day of each and every calendar month, one cent per gallon for all gasoline . . . dollars ($............) to reimburse the company in part for expenses paid by the company at said station."

The following is paragraph 9 of the stipulation or agreed statement of facts as filed in the case at the beginning of the trial:

"That during the period from March 1, 1931, to and including April 17, 1933, the defendant company acquired by ownership or lease a number of parcels of land, together with the service filling station and other improvements thereon at the time of acquisition or placed thereon by the defendant company, to which the company made sales and/or transfers of gasoline and other petroleum products, upon which the plaintiff was paid commissions under his commission-agency agreement. Said commissions are included in the total of $55,771.14 referred to in Paragraph VI, as having accrued to the plaintiff. In connection with each of them and at a time when plaintiff was the com-

mission agent of the defendant, the plaintiff and the defendant entered into a written contract, termed a 'station agency agreement,' wherein the plaintiff agreed to pay to the defendant a specified sum or sums based on a unit price on sales to reimburse the defendant company in part for expenses paid by it at said station."

The defendant filed requested findings of fact and conclusions of law containing both findings and conclusions as to there being consideration for the station-agency agreements. The trial court copied in its findings of fact paragraph No. 9 of the stipulation above quoted, being paragraph No. 9 of its findings, but also made as finding of fact No. 13 the following:

"No consideration or anything of value was received by plaintiff from defendant under any of the station-agency agreements signed by him or for the signing thereof."

The first conclusion of law made by the trial court is as follows:

"Plaintiff has received no consideration for the execution of any of the station-agency agreements executed by him and involved herein, and such station-agency agreements are therefore void."

The defendant filed a motion for new trial on account of erroneous rulings of the court, that the conclusions of law and findings of fact are contrary to the law and evidence, that conclusions of law, findings of fact and the judgment of the court are contrary to the evidence and agreed statement of facts and are not supported by any evidence, and for other reasons.

Appellant calls attention to the language contained in stipulation or agreed statement of fact No. 9 which in effect appellant claims is an admission of benefit or consideration received by plaintiff by the purchase or lease of additional filling stations to which the plaintiff will be able thereafter to sell goods and receive commissions, which statement is copied verbatim in finding No. 9 of the trial court. Appellant also calls attention to the language of these twenty-three contracts themselves which the appellant claims contain a consideration; also to the fact that the evidence of the plaintiff upon the trial, which is usually limited to the consideration of the trial court, was only opinion evidence.

Appellee argues in support of the finding and conclusion of the trial court that even if some of the language in the station-agency agreements may be construed as showing consideration in the way of paying commissions upon sales made to the filling stations acquired by the defendant company, that seven or more of these filling stations were acquired before the making of the commission-agency

contract on March 1, 1931, and that plaintiff was from the very beginning supplying these seven or more stations and receiving commissions from such sales before he signed the contract, although they dated back to a prior date, and that he had a right under his commission-agency agreement to avail himself of all the business of the filling stations newly acquired by the defendant company.

Appellee also cites the case of *Shuler v. Lashhorn,* 67 Kan. 694, 74 Pac. 264, where it was held that the functions of the supreme court were limited to alleged errors where findings of fact and conclusions of law were made by the trial court, and that the attention of the trial court should be called to errors or omissions in such findings and conclusions before the motion for new trial was filed. That case, however, differs materially from the one at bar in that the testimony seemed to be mainly oral and no request for findings or conclusions of law was made or suggestions made along that line to the trial court until the filing of the motion for new trial.

*Buck v. Uplinger,* 79 Kan. 858, 99 Pac. 1134, seems to be along the same line as the Shuler case.

R. S. 16-107 is as follows:

"All contracts in writing, signed by the party bound thereby, or his authorized agent or attorney, shall import a consideration."

Appellant cites the case of *Drake v. Seck, Adm'x,* 116 Kan. 717, 718, 229 Pac. 67, where it was plainly and positively held that the statement of the witness that "there was no consideration for the notes, was a mere opinion and conclusion of the witness. . . . But there were the notes, importing a consideration (R. S. 16-107), deemed prima facie to have been executed for a valuable consideration." It is further held in the same case that—

"Want of consideration is not a mere burden-shifter, but is an affirmative defense (R. S. 16-108), which must be established by a preponderance of the evidence in order to defeat recovery. (*Fuller v. Scott,* 8 Kan. 25.) The presumption of consideration is not a presumption of law; it is a presumption of fact. It extends to any fact which, under the situation and circumstances of the parties, might reasonably supply a consideration, and it cannot be overthrown except by proof of facts warranting the inference of no consideration of any kind. Consideration may arise in various ways, and proof of absence of one kind does not necessarily disprove presence of another kind." (p. 718.)

Appellee contends that the so-called station-agency agreements were not intended to speak the truth and were coercive. It appears they were generally sent by the company from Denver, Colo., to plaintiff, with a letter requesting plaintiff to sign them. It is further

contended that while the contracts are to reimburse the company in part for the expense paid by the company at said station, it is not shown in the contract or elsewhere what relation the deduction bears to the expense or whether there was any expense incurred or borne by the defendant company. It would not seem to be necessary under the terms of the contracts to specifically state in each contract, or any of them, the exact part of the expense plaintiff had incurred when it is expressly stated in them that such payment is based upon a certain price per gallon.

Appellee further contends that the contracts do not show either a benefit to the party promising or a detriment to the company to which the promise is made, as defined by texts and opinions cited, as the true application of the definition of consideration. The benefit the trial court found in finding No. 9 was acquisition by the company of the new or additional filling stations "to which the company made sales and/or transfers of gasoline and other petroleum products, upon which the plaintiff was paid commissions under his commission-agency agreement." The company was not bound by the commission-agency agreement to purchase or lease any filling stations.

We agree with appellee that the case of *Skinner v. Skinner*, 126 Kan. 601, 270 Pac. 594, is not strictly applicable here, as it cannot be well said that the subsequent agency contracts are shown to have been contemporaneous contracts, but as far as a consideration is concerned they should each have such.

The modifications made by exhibits 1 and 2 as to the use of new and additional oils we think do not affect the issue here as to want of consideration. Of course the plaintiff was not bound to sign any of these subsequent agreements, but would his business, sales and commission increase if the defendant ceased to purchase or lease new filling stations? Neither one was ,bound to go further in the way of getting or using new filling stations by the terms of the commission contract.

We have carefully considered the many additional points raised by the appellee as to the necessity of a showing of expense incurred by defendant in procuring and maintaining the several filling stations before any deduction should be allowed, even if it should be held there was a consideration for such contracts. There is nothing in the pleadings as we read them that requires such a preliminary showing or anything approaching the necessity of an accounting.

We conclude that these agency contracts themselves show a consideration, that finding of fact No. 9 finds a consideration, although another finding and conclusion find and hold the contrary. On this part of the appeal we hold the judgment of the trial court should be reversed and the defendant should recover.

Another question is involved in this case and this appeal, involving $362.43, which the plaintiff claims was improperly deducted from the commission to which he was entitled under the commission-agency agreement, and it was for the failure of the defendant company to allow the plaintiff the full amount specified by said contract as commission on peddler sales. Plaintiff had been allowed one cent per gallon commission on all sales made to oil peddlers, as they were called, who came to the bulk station and obtained the oil, from the date of the contract until December 1, 1932, six months before the contract terminated. During the month of December, 1932, the company wrote the plaintiff, as it did to all other bulk commission agents, that effective December 1 the rate of commission would be one half cent per gallon under section fourth (4) (h), instead of fourth (4) (a). The letter was not signed by plaintiff as being accepted or agreed to, as other letters were. It was apparently a matter of construction as to which of the two subdivisions as to commissions was the proper place for the peddler sales. Subdivision (a) provides:

"(a) 1 cent per gallon on sales of kerosene and/or gasoline when sale is made at the bulk station or where freight or drayage is prepaid or allowed and deducted from the invoice."

Subdivision (h) is as follows:

"(h) ½ cent per gallon on all gallonage products, and ⅛ cent per pound on all products sold by the pound, transferred to other stations, districts, or departments of the company, when such transfers are made at the bulk station."

The plaintiff testified in detail as to the exact routine in the peddler-sale work and business, and the trial court in finding No. 14 found the way in which such peddler sales relate to the business at the bulk-sales station, and the second conclusion of law is as follows:

"The sales made by plaintiff which have been denominated 'peddler sales' should be credited to plaintiff under the provisions of· 'fourth 4 (a)' of the commission-agency agreement between the parties."

We find the plaintiff did not sign the letter making such change and there was sufficient evidence to support the finding of the trial

court concerning peddler sales, and we concur in the conclusion as to the same.

The judgment will be reversed, as above stated, as to station-agency agreements, but affirmed as to commission on peddler sales. It is so ordered.